**United States District Court**
For the Northern District of California

1

2

3                    UNITED STATES DISTRICT COURT

4                    NORTHERN DISTRICT OF CALIFORNIA

5

6

7    DEBRA GARCIA,

8              Plaintiff,                        No. C 13-3670 PJH

9         v.                                     **ORDER GRANTING IN PART AND
                                                 DENYING IN PART MOTION TO**
10   WELLS FARGO BANK N.A., et al.,              **DISMISS**

11             Defendants.

12   _____/

13        Defendants' motion to dismiss came on for hearing before this court on December

14   11, 2013.  Plaintiff Debra Garcia ("plaintiff") appeared through her counsel, Eunji Cho.

15   Defendants Wells Fargo Bank, N.A. and U.S. Bank, N.A. ("defendants") appeared through

16   their counsel, Mary Kate Kamka.  Having read the papers filed in conjunction with the

17   motion and carefully considered the arguments and the relevant legal authority, and good

18   cause appearing, the court hereby GRANTS in part and DENIES in part defendants' motion

19   to dismiss as follows.

20                              **BACKGROUND**

21        This is a mortgage case.  The parties present differing versions of the facts, so this

22   order will first present defendants' allegations (which reach back further in time), and then

23   will present plaintiff's factual allegations, which are more detailed as to the bases for her

24   asserted causes of action.

25        According to defendants, plaintiff refinanced the subject property on October 13,

26   2004, through Wells Fargo.  Dkt. 18 at 1.  The amount of the refinance loan was $399,000.

27   Id.  Plaintiff then refinanced the junior lien on her home in August 2005, in the amount of

28   $100,000.  Id.  Plaintiff then obtained another loan in February 2007, in the amount of

United States District Court

For the Northern District of California

1  $19,000. Id.

2      In January 2008, plaintiff first stopped making payments on her loans, resulting in a

3  notice of default in April 2008, indicating $20,631.44 in arrearage. Dkt. 18 at 1. Plaintiff

4  ultimately cured this default, resulting in the rescission of the notice of default. Id.

5      Plaintiff again stopped making payments sometime later in 2008, resulting in a

6  second notice of default in February 2009, indicating $20,923.63 in arrearage. Dkt. 18 at 1-

7  2. Plaintiff ultimately cured this default as well. Id. at 2.

8      Plaintiff again stopped making payments sometime in 2009, resulting in a third

9  notice of default in August 2009, indicating $19,198.26 in arrearage. Dkt. 18 at 2. Plaintiff

10  ultimately cured this default. Id.

11      Plaintiff again stopped making payments (presumably, sometime in 2011, though

12  defendants do not provide a date), resulting in a fourth notice of default in October 2011,

13  indicating $6,525.67 in arrearage. Dkt. 18 at 2. Again, plaintiff cured the default, though

14  she did not cure it until February 2012, when the arrearage was $22,269.77. Id.

15      After curing default for the fourth time, plaintiff did not make another payment,

16  resulting in a fifth notice of default on April 5, 2013. Dkt. 18 at 2. According to defendants,

17  plaintiff stopped making payments in March 2012, and was $36,861.31 in arrears at the

18  time of the notice of default. Id.

19      Plaintiff's operative first amended complaint ("FAC") does not discuss the first three

20  notices of default (stating only that she "had reinstated her loan several times"), but does

21  allege that, in July 2011, she contacted Wells Fargo to see if more favorable loan terms

22  were possible. FAC, ¶ 13. She spoke to Herman Purewal, who identified himself as

23  plaintiff's point of contact. Id. Plaintiff alleges that Purewal "told her very specifically that in

24  order to be considered for a loan modification, she would have to be at least three months

25  late on her mortgage payments." Id., ¶ 14. Plaintiff alleges that she was "uncomfortable"

26  about missing payments, but that Purewal clearly told her that she needed to do so to be

27  eligible for a modification, and that Wells Fargo had a policy not to foreclose on a property

28  while a modification application was pending. Id. Plaintiff alleges that "Purewal promised

2

United States District Court

For the Northern District of California

1    plaintiff that her property would not be foreclosed on while she was pursuing a

2    modification." Id.

3          Plaintiff alleges that she started missing payments in July 2011, as instructed, and

4    after missing the third payment, she "contacted Wells Fargo to apply for a loan

5    modification." FAC, ¶ 15.  After not being able to get in touch with Purewal at first, plaintiff

6    did get in contact with Purewal (though it is not clear when), and submitted the loan

7    modification paperwork. Id.  Purewal told her that he would contact her with a decision by

8    December 2011. Id.

9          During that time, Wells Fargo recorded a notice of default (in October 2011), and

10   scheduled a trustee's sale for February 9, 2012.  FAC, ¶¶ 15-16.  Plaintiff claims that she

11   was anxious and fearful, and that she left "many messages" for Purewal, with no response.

12   Id., ¶ 17.  Then, "just a few days" before the trustee's sale, Purewal called her back and

13   told her that there was nothing that he could do. Id.  Plaintiff ultimately paid the

14   reinstatement amount of $22,269.77 on February 7, 2012. Id., ¶ 18.

15         Plaintiff then alleges that she again contacted Purewal in January 2013 to "reinstate

16   her loan as she had done in the past." FAC, ¶ 19.  She alleges that she was given a

17   reinstatement amount of $36,000, which she believed to be excessive. Id.  Plaintiff alleges

18   that "suspicion regarding the excessive reinstatement calculation was later confirmed

19   when, on or about April 5, 2013, defendant caused to be recorded a notice of default" which

20   indicated that "she was $36,861.31 in arrears on her account, the same amount that she

21   had been provided months earlier." Id.

22         The FAC then includes a separate section on "facts regarding violation of Civil Code

23   Section 2923.7," which establishes Wells Fargo's duty to designate a single point of contact

24   upon a borrower's request for a foreclosure prevention alternative.  Plaintiff alleges that,

25   starting in January 2013, she made several attempts to verify whether Purewal was her

26   single point of contact. FAC, ¶ 22.  However, plaintiff claims that he never returned her

27   calls, and that she was given excuses for why Purewal could not take her call. Id., ¶ 23.

28   After receiving notice, in February 2013, that her loan had been referred to outside counsel

3

United States District Court

For the Northern District of California

1  to initiate foreclosure proceedings, plaintiff went to a Wells Fargo branch and spoke to a

2  different mortgage specialist (Paul Gruber), and after discussions with him proved

3  unsuccessful, she was assigned to a "preservation specialist" (Alexandra Dominguez) on

4  June 17, 2013. Id., ¶¶ 27-30. Plaintiff alleges that this single point of contact should have

5  been assigned in January 2013. Id., ¶ 30.

6        Plaintiff filed suit in this court on August 7, 2013, and after defendants filed a motion

7  to dismiss the original complaint, plaintiff filed the operative FAC on September 26, 2013.

8  The FAC alleges seven causes of action against Wells Fargo and U.S. Bank (which is

9  alleged to be the current lender and owner of plaintiff's note): (1) violation of Cal. Civ. Code

10 §§ 2923.5 and 2923.7, (2) breach of contract, (3) breach of the implied covenant of good

11 faith and fair dealing, (4) violation of Cal. Civ. Code § 2924c, (5) negligent

12 misrepresentation, (6) fraud, and (7) unfair competition under Cal. Bus. & Prof. Code §

13 17200.

14                                   **DISCUSSION**

15       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal

16 sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191,

17 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom

18 Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive

19 a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the

20 minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires

21 that a complaint include a "short and plain statement of the claim showing that the pleader

22 is entitled to relief." Fed. R. Civ. P. 8(a)(2).

23       A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

24 plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support

25 a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

26 1990). The court is to "accept all factual allegations in the complaint as true and construe

27 the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group,

28 Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

United States District Court
For the Northern District of California

1    However, legally conclusory statements, not supported by actual factual allegations,

2  need not be accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  The allegations in

3  the complaint "must be enough to raise a right to relief above the speculative level." Bell

4  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted).  A

5  claim has facial plausibility when the plaintiff pleads factual content that allows the court to

6  draw the reasonable inference that the defendant is liable for the misconduct alleged."

7  Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not permit the

8  court to infer more than the mere possibility of misconduct, the complaint has alleged – but

9  it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Id. at 679.  In the event

10  dismissal is warranted, it is generally without prejudice, unless it is clear the complaint

11  cannot be saved by any amendment.  See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir.

12  2005).

13    In addition, while the court generally may not consider material outside the pleadings

14  when resolving a motion to dismiss for failure to state a claim, the court may consider

15  matters that are properly the subject of judicial notice.  Lee v. City of Los Angeles, 250 F.3d

16  668, 688-89 (9th Cir. 2001); Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279,

17  1282 (9th Cir. 1986).  Additionally, the court may consider exhibits attached to the

18  complaint, see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555

19  n.19 (9th Cir. 1989), as well as documents referenced extensively in the complaint and

20  documents that form the basis of a the plaintiff's claims.  See No. 84 Employer–Teamster

21  Joint Counsel Pension Trust Fund v. America West Holding Corp., 320 F.3d 920, 925 n.2

22  (9th Cir. 2003).

23    Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake

24  shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Under Rule 9(b), falsity must be

25  pled with specificity, including an account of the "time, place, and specific content of the

26  false representations as well as the identities of the parties to the misrepresentations."

27  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted).  "[A]llegations

28  of fraud must be specific enough to give defendants notice of the particular misconduct

5

United States District Court
For the Northern District of California

1  which is alleged to constitute the fraud charged so that they can defend against the charge

2  and not just deny that they have done anything wrong." Bly-Magee v. California, 236 F.3d

3  1014, 1019 (9th Cir. 2001) (citation and quotations omitted).  In addition, the plaintiff must

4  do more than simply allege the neutral facts necessary to identify the transaction; he must

5  also explain why the disputed statement was untrue or misleading at the time it was made.

6  Yourish v. California Amplifier, 191 F.3d 983, 992-93 (9th Cir. 1999).

7  B.     Legal Analysis

8         As an initial matter, the FAC makes no specific allegations against U.S. Bank, and

9  none of the briefing discusses U.S. Bank's role in any of the conduct underlying plaintiff's

10  claims.  Thus, defendants' motion to dismiss is GRANTED as to all asserted claims against

11  U.S. Bank.

12        Turning to the merits of plaintiff's claims, plaintiff's first cause of action for wrongful

13  foreclosure actually consists of two prongs – one for the alleged violation of Cal. Civil Code

14  § 2923.5, and one for the alleged violation of Cal. Civil Code § 2923.7.  This order will

15  address them separately.

16        The first prong of plaintiff's first cause of action alleges that Wells Fargo failed to

17  contact plaintiff in person or by telephone in order to assess her financial situation and

18  explore options for her to avoid foreclosure, as required by section 2923.5.  Plaintiff further

19  alleges that Wells Fargo did not advise her that she had the right to request a subsequent

20  meeting to occur within 14 days, as required by section 2923.5.  In response, Wells Fargo

21  provides a declaration, dated February 21, 2013, stating that it had contacted plaintiff to

22  assess her financial situation and explore foreclosure-avoidance options.  See Dkt. 19, Ex.

23  16.  Wells Fargo further argues that plaintiff "has not provided any factual support to

24  contradict the declaration."

25        However, on this specific type of claim, there are not any "facts" for plaintiff to allege

26  other than the negative statement that Wells Fargo did not actually contact plaintiff.  And in

27  the FAC, plaintiff does describe her contact with Wells Fargo in the relevant timeframe –

28  alleging that, in March 2013, she spoke to an "executive mortgage specialist" (Paul Gruber)

6

1   who discussed with plaintiff the reinstatement amount on her loan.  FAC, ¶¶ 27-29.  Plaintiff

2   asked Gruber if the amount of her monthly payment had been increased by mistake, and

3   Gruber said that he would investigate and provide an answer within a week.  Id., ¶ 28.  Two

4   weeks passed without an answer, so plaintiff called Gruber, who informed her that "private

5   investigators who are holding the loan but whom Gruber would not identify were not willing

6   to 'negotiate' the reinstatement amount or modify plaintiff's loan."  Id., ¶ 29.  It is unclear

7   whether Wells Fargo is relying on this contact to support its declaration – but it is unlikely,

8   given that the declaration was recorded on February 21, 2013, whereas plaintiff claims that

9   her first contact with Gruber was not until March 2013.  In short, the parties simply provide

10  conflicting accounts of Wells Fargo's contact with plaintiff, and because plaintiff's

11  allegations are to be taken as true at this stage of the case, the court finds that plaintiff has

12  adequately alleged that Wells Fargo did not actually contact her 30 days (or more) before

13  the date of the declaration.  Wells Fargo's motion to dismiss this prong of plaintiff's first

14  cause of action is thus DENIED.

15          The second prong of plaintiff's first cause of action alleges that Wells Fargo did not

16  promptly establish a single point of contact ("SPOC") and provide to her one or more direct

17  means of communication with the single point of contact, as required by section 2923.7.  As

18  explained above, plaintiff alleges that Purewal was initially assigned as her single point of

19  contact, but plaintiff alleges that she attempted, on numerous occasions, to contact

20  Purewal, and that he was unresponsive to her phone calls.  Wells Fargo argues that the

21  statute "does not define the frequency with which a SPOC must communicate with a

22  borrower," which is true, but would appear to allow a defendant to avoid liability simply by

23  making a nominal "appointment" of a SPOC, even if that SPOC never communicates with

24  the borrower ever again.  And as plaintiff argues, the statute requires the SPOC to

25  "adequately inform the borrower of the current status of the foreclosure prevention

26  alternative" and to "ensur[e] that a borrower is considered for all foreclosure prevention

27  alternatives offered by, or through, the mortgage servicer, if any."  Purewal's failure to

28  follow up on plaintiff's loan modification request (made in October 2011, with a promised

United States District Court

For the Northern District of California

1    response by December 2011) would, by itself, appear to be sufficient to state a claim under

2    either of these two subsections.  Thus, the court DENIES Wells Fargo's motion to dismiss

3    as to the second prong of plaintiff's first cause of action.

4         The court will address plaintiff's second cause of action (breach of contract) and

5    third cause of action (breach of implied covenant of good faith and fair dealing) together,

6    because they are based on the same underlying conduct.  In general, plaintiff alleges that

7    Wells Fargo breached her initial loan refinance agreement "when it demanded, as a

8    condition of reinstatement, the fees it waived when it told her to stop making payments in

9    July 2011."  However, as defendants point out, the loan agreement provided for the

10   imposition of all of the complained-about fees.  Thus, plaintiff cannot state a claim for

11   breach of the loan agreement, and Wells Fargo's motion to dismiss is GRANTED as to

12   plaintiff's second and third causes of action.  However, plaintiff will be given leave to amend

13   these claims, because plaintiff may be able to state a claim that she entered into an oral

14   contract with Purewal (who was acting on behalf of Wells Fargo).  In the FAC, plaintiff

15   alleges that Purewal agreed to consider a loan modification (i.e., to either offer a loan

16   modification, or to inform plaintiff if she were ineligible) if plaintiff missed three payments.

17   Thus, if there was a breach of contract, it was not a breach of the loan agreement itself, it

18   was a breach of an oral agreement between Purewal and plaintiff.  See also Corvello v.

19   Wells Fargo Bank, N.A., 728 F.3d 878, 884-85 (9th Cir. 2013).  While the court does not

20   opine on the merits of any claim for breach of an oral contract, it will allow plaintiff an

21   opportunity to amend so that she may clarify her claims.

22        Plaintiff's fourth cause of action alleges that Wells Fargo demanded funds from her

23   in excess of the amount necessary to reinstate her loan, in violation of Cal. Civil Code §

24   2924c.  However, it appears that the allegedly excessive fees all stem from plaintiff's failure

25   to make payments on her loan, which, in turn, stems from Purewal's representation to

26   plaintiff that she would need to miss at least three payments in order to be eligible for a

27   loan modification.  Thus, while the "excessive" funds may provide a measure of damages

28   for a contract claim, they do not appear to form the basis of a claim under section 2924c.

**United States District Court**
For the Northern District of California

1   Wells Fargo's motion to dismiss plaintiff's fourth cause of action is therefore GRANTED,

2   and while the court will allow plaintiff an opportunity to amend this claim, the court notes

3   that plaintiff will need to more specifically describe why the fees charged were "excessive" if

4   she wishes to maintain a viable claim under section 2924c.

5        Plaintiff's fifth cause of action (negligent misrepresentation) and sixth cause of action

6   (fraud) are based on the same underlying conduct, so the court will address them together.

7   Both claims are based on Purewal's alleged representation to plaintiff that she would need

8   to miss at least three payments in order to be eligible for a loan modification, and that her

9   property would not be foreclosed upon during the modification application process.  The

10  court agrees with Wells Fargo that any misrepresentation appears to have related to a

11  future fact (i.e., the promise to either offer a modification or to inform plaintiff that she was

12  ineligible, and/or not to foreclose on her home while the modification was being sought),

13  and not to a past or existing fact.  Thus, plaintiff's allegations appear to be more suited to a

14  breach of contract claim than a fraud claim.  However, if plaintiff can actually allege that

15  Purewal's statements were untrue when made, then plaintiff would be able to state a claim

16  on these fraud-type claims.  Because Rule 9(b) requires claims of falsity to be pled with

17  particularity, including an explanation of why the disputed statement was untrue or

18  misleading at the time it was made, Wells Fargo's motion to dismiss plaintiff's fifth and sixth

19  causes of action is GRANTED, with leave to amend.

20       Plaintiff's seventh cause of action alleges a violation of California's unfair

21  competition law, and is premised on the various violations of California law that are alleged

22  in the FAC.  Because the fees triggered as a result of plaintiff's non-payment do establish

23  standing, and because plaintiff has pled a viable cause of action at least as to her first

24  cause of action, Wells Fargo's motion to dismiss plaintiff's seventh cause of action is

25  DENIED.

26       Plaintiff shall have until **March 3, 2014** to file a second amended complaint in

27  accordance with this order, and defendants shall have until **March 24, 2014** to answer or

28  otherwise respond to the complaint.  Despite the absence of allegations as to defendant

1  U.S. Bank, plaintiff shall have one opportunity to amend her claims against it.  Any

2  amendment must clearly set forth which claims are asserted against which defendant and

3  what each defendant did to make them liable.  Plaintiff may no longer simply lump all

4  defendants together without delineating the wrongful acts committed by each.  Also, no

5  new parties may be added without leave of court, and no new claims may be added without

6  leave of court or the agreement of the parties.

7          Finally, defendants' request for judicial notice is GRANTED.

8          **IT IS SO ORDERED.**

9  Dated: January 31, 2014

10  _____
    PHYLLIS J. HAMILTON
    United States District Judge

**United States District Court**
For the Northern District of California

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28